UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROINER JOSE MOLINA-MOLINA,

      Petitioner,

    v.

SECRETARY KRISTI NOEM,
GARRETT J. RIPA,  ICE,
DEPARTMENT OF HOMELAND
SECURITY (DHS), ATTORNEY
GENERAL PAMELA BONDI,
EOIR,

      Respondents,

Case No. 2:26-cv-605-KCD-NPM

      /

## **ORDER**

Petitioner Roiner Jose Molina-Molina wants a do-over. In his motion to reconsider, he asks this Court to reverse its denial of his habeas corpus petition, arguing that we misapprehended the timeline of his entry and misread his immigration paperwork. (Doc. 9.)[1] Neither is true.

Molina seeks relief under Federal Rule of Civil Procedure 59(e). (*Id.* at 2.) That path is an exceptionally narrow one. It is reserved for correcting clear errors or preventing manifest injustice. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). It is not a vehicle to relitigate old arguments, and it certainly does not allow a party to rewrite the factual record. "Simply put, [a]

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Hughes v. Stryker Sales Corp.*, No. CIV.A.08-0655-WS-N, 2010 WL 2608957, at *2 (S.D. Ala. June 28, 2010).

Molina first argues that the Court's prior decision rests on a factual error. He claims he "entered the United States in 2022 and was not detained at the time of entry," but was instead taken into ICE custody years later in the interior of the country. (Doc. 9 at 2.) The record tells a different story. His Form I-213 explicitly confirms that border patrol agents apprehended him in Yuma, Arizona on February 3, 2022—the very day he crossed the border. He was processed and subsequently released on his own recognizance. (Doc. 11-1.) When a noncitizen with no legal status or right to enter is stopped at the border and released into the country, they remain, legally speaking, at the border. Their subsequent arrest years later does not magically alter the nature of their initial arrival. This is known as the "entry fiction." *Moore v. Nielsen*, No. 418CV01722LSCHNJ, 2019 WL 2152582, at *3 (N.D. Ala. May 3, 2019); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining that arriving aliens who have been paroled into the country or denied admission but are nonetheless present within the nation's borders are "treated, for constitutional purposes, as if stopped at the border").

2

An alien "who arrives in the United States (whether or not at a designated port of entry[)] shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission must be detained pending removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). The Government has only one alternative under this framework—it can temporarily release the noncitizen on parole. *Id.* at 288. But make no mistake, this is not a lawful entry. A paroled noncitizen has not been admitted to the country. Instead, the law treats them as if they never crossed the threshold. When the parole ends, they return to custody and are treated "in the same manner as that of any other applicant for admission." *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)). So, while Molina may have physically spent time in the interior of the United States after his release at the border, the law places him exactly where he started—at the border, subject to § 1225. *See Campbell v. Almodovar*, No. 1:25-CV-09509 (JLR), 2025 WL 3538351, at *6 (S.D.N.Y. Dec. 10, 2025). The original order faithfully applied this exact framework, meaning the Court made no error to correct.

Molina's second point focuses on the paperwork. (Doc. 9 at 3.) His Notice to Appear ("NTA") classifies him as an "alien present in the United States who has not been admitted," rather than an "arriving alien." (Doc. 9-1.) He claims this label pushes him out of 8 U.S.C. § 1225 and into the bond-eligible framework of § 1226. But this argument ignores the statutory text.

3

Section 1225 governs "applicants for admission," which Congress explicitly defined as "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). So rather than offering an escape hatch from § 1225, the NTA is a verbatim match that drops him right in its center.

But even if we play out Molina's argument, the same result follows. Assume an immigration officer checked the wrong box and formally misclassified him under § 1226. It still would not matter. A noncitizen's substantive rights are governed by the laws Congress enacts, not the paperwork. When Congress mandates that a specific class of noncitizens must be detained, an immigration officer cannot rewrite that law with a slip of the pen. *See I.N.S. v. Pangilinan*, 486 U.S. 875, 883-85 (1988); *Savoury v. U.S. Atty. Gen.*, 449 F.3d 1307, 1318 (11th Cir. 2006). The Immigration and Nationality Act dictates who receives a bond hearing, and no amount of deliberate administrative paperwork can grant a right the statute explicitly denies. To hold otherwise would allow the executive branch to rewrite the laws of Congress one checked box at a time. *See, e.g., Liang v. Almodovar*, No. 1:25-CV-09322-MKV, 2025 WL 3641512, at *6 (S.D.N.Y. Dec. 15, 2025).

There is no clear error or manifest injustice here. Because Molina is an applicant for admission under § 1225, his detention is mandatory. The statute offers no mechanism for a bond hearing, and the Supreme Court has definitively instructed us not to read one into the text. *Jennings*, 583 U.S. at

4

297. Accordingly, Molina's Motion to Reconsider and Alter or Amend Judgment (Doc. 9) is **DENIED**.

**ORDERED** in Fort Myers, Florida on April 2, 2026.

Kyle C. Dudek
United States District Judge